# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle A. Smith,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Megan J. Brennan, Postmaster General, in her official capacity; United States Postal Service,<br><br>　　　　　Defendants. | Case No. 20-cv-00498 (SRN/DTS)<br><br><br>**ORDER** |

Daniel J. Cragg and Robert T. Dube, Jr., Eckland & Blando, LLP, 800 Lumber Exchange, 10 South Fifth Street, Minneapolis, MN 55402, for Plaintiff.

Adam J. Hoskins, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Partial Dismissal [Doc. No. 26] filed by Defendants Megan J. Brennan and the United States Postal Service (collectively, "Defendants") and the Motion for Leave to Amend [Doc. No. 48] filed by Plaintiff Michelle Smith. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS in part** and **DENIES in part** the Motion for Partial Dismissal, and **GRANTS** the Motion for Leave to Amend.

## I.    BACKGROUND

Smith originally filed this lawsuit herself, and while proceeding *pro se* she amended her Complaint twice. (*See* Compl. [Doc. No. 1]; Am. Compl. [Doc. No. 3]; Second Am.

Compl. [Doc. No. 20].) After obtaining representation, Smith seeks to file a Third Amended Complaint, which largely adds detail and clarification to Smith's *pro se* Second Amended Complaint. The facts are drawn from the Second Amended Complaint and, where appropriate, the proposed Third Amended Complaint.

### A.    Alleged Harassment of Smith and Her Husband

Smith worked as a mail carrier for the United States Postal Service ("USPS") at its Stillwater location in Oak Park Heights, Minnesota, from December 2006 to January 2017. (Second Am. Compl. ¶ 11.) Her husband, Steve Smith, worked at the same location as a laborer custodian from October 2013 to December 2016. (*Id.* ¶ 12.) Smith and her husband are both African American. (*Id.* ¶¶ 9-10.)

While working at the Oak Park Heights facility, Smith and her husband allegedly experienced racial harassment and discrimination by their supervisors and coworkers. According to the proposed Third Amended Complaint, in September 2014, Smith's husband filed an Equal Employment Opportunity ("EEO") complaint with the USPS for "harassment, offensive conduct, and discrimination." (Mot. to Amend Pleadings [Doc. No. 48], Ex. A ("Prop. Third Am. Compl."), at ¶ 14.) Smith's husband's September 2014 EEO charge is still pending. (*Id.* ¶ 15.)

Thereafter, in May 2016, it is alleged that Smith's husband approached Postmaster Terry Hjelmgren about a promotion to the position of maintenance mechanic. (Second Am. Compl. ¶ 14.) Hjelmgren allegedly told Smith's husband that he could not be a maintenance mechanic because he was black, and "the Post Office was run by the 'good old boys.'" (*Id.* ¶ 15.) In addition, Hjelmgren and Tommy Klein, a postal clerk, allegedly

referred to Smith's husband as "Monkey Man" throughout his time at Oak Park Heights. (*Id.* ¶ 16.) At some point, a picture of a gorilla was placed on the workroom floor, and Char Wilson, a supervisor, allegedly said it looked like Smith's husband. (*Id.* ¶ 17.) In September 2016, Smith filed an EEO complaint with the USPS alleging "harassment, leave and pay, and working conditions," which is still pending.[1] (*Id.* ¶ 18.) Finally, in December 2016 Smith allegedly overheard Klein say that he could not wait until the Smiths "were gone like the Obamas," because he "was 'trying to clean the place up.'" (*Id.* ¶¶ 20-21.) Smith also overheard Hjelmgren suggest that she and her husband were lying with respect to Smith's September 2016 EEO complaint. (*Id.* ¶ 22.)

Smith alleges that she and her husband left the Oak Park Heights facility in December 2016 because of the foregoing harassment. (*Id.* ¶ 23.) In January 2017, Smith and her husband began working as laborer custodians at the USPS's Processing and Distribution Center in St. Paul, Minnesota. (*Id.* ¶ 24.) Because Smith had previously worked as a mail carrier, the transition to the St. Paul Processing and Distribution Center allegedly required Smith to take a demotion and a $6-per-hour pay cut. (Prop. Third Am. Compl. ¶ 27.)

From January 2017 onward, Smith alleges that she and her husband were harassed and stalked by a coworker, Ann Ziemer, because of their race and because of Smith's

---

[1] Smith's Second Amended Complaint indicated that her husband filed the September 2016 EEO complaint. However, the proposed Third Amended Complaint clarifies that it was Smith who filed the September 2016 complaint, consistent with Smith's explanation of this case's background in her opposition memorandum. (Prop. Third Am. Compl. ¶ 20; *see* Mem. in Opp. to Mot. to Dismiss [Doc. No. 52], at 4.)

husband's September 2014 EEO complaint. (Second Am. Compl. ¶¶ 26-30.) Specifically, in January 2017 Ziemer mentioned to Smith's husband that she knew Klein, who was named in the September 2014 complaint, and Hjelmgren. (*Id.* ¶¶ 27, 31.) Through January and February 2017, Ziemer allegedly followed Smith around their workplace. (*Id.* ¶¶ 32.) Smith reported this to management, and on March 24, 2017 management told Smith, her husband, and Ziemer to stay away from each other and "treat each other with dignity and respect." (*Id.* ¶ 35.)

Notwithstanding management's admonition, on March 26, 2017, Ziemer allegedly waited in the parking lot for Smith and her husband, wrote down their license plate number, and followed them home. (*Id.* ¶ 37.) In addition, Ziemer allegedly followed Smith around the workplace and "took notes" on March 29, 2017 and April 4, 2017. (*Id.* ¶ 36.) Smith alleges that on April 5, 2017, Ziemer falsely accused Smith and her husband of keying Ziemer's car, although a witness allegedly saw Ziemer key her own car. (*Id.* ¶¶ 39-40.) On April 6, 2017, Smith allegedly saw Ziemer driving on the street Smith lives on in St. Paul. (*Id.* ¶ 41.) On April 22, 2017 and again on April 30, 2017, Ziemer allegedly hid Smith's mop. (*Id.* ¶ 42.) And on April 26, 2017, Ziemer allegedly attempted to get Smith and her husband to walk in front of Ziemer's car. (*Id.* ¶ 43.)

Smith reported each of these incidents to USPS management. (*Id.* ¶ 44.) On April 29, 2017, Smith's supervisor, Larry Stevens, who was allegedly having a sexual relationship with Ziemer, told Smith that "the investigation into Ziemer's actions had been completed and no further action would be taken." (*Id.* ¶¶ 34, 45.) Also on April 29, Smith

was informed that Ziemer had accused Smith of threatening Ziemer. (*Id.* ¶ 46.) Smith filed

a second EEO charge with the USPS on April 30, 2017. (*Id.* ¶ 6.)

Ziemer's alleged misconduct continued. On October 19, 2017, Ziemer allegedly

"came up behind" Smith's husband and "rubbed her body and chest on him." (*Id.* ¶ 47.)

Then, in November 2017, Ziemer allegedly filed a false report with USPS management

accusing Smith and her husband of engaging in inappropriate physical contact at work. (*Id.*

¶ 48.) On December 17, 2017, Smith caught Ziemer taking photos of her. (*Id.* ¶ 49.) On

April 15, 2018, Ziemer allegedly "made a comment about [Smith's husband's] music and

said she 'could not stand him acting black.'" (*Id.* ¶ 50.) On two occasions in April and May

2018, Ziemer followed Smith's husband around the workplace. (*Id.* ¶ 51.) And on July 18,

2018, Ziemer allegedly blocked Smith's husband's car in the parking lot, wrote down his

license plate number, and called the police on him. (*Id.* ¶ 53.)

Smith alleges that she spoke with Matthew Nelson, a supervisor, and that Nelson

told her management was aware of her issues with Ziemer. (*Id.* ¶ 52.) Indeed, when Ziemer

called the police on July 18, 2018, USPS management spoke with the responding officers

and acknowledged that there were ongoing issues between the parties. (*Id.* ¶ 54.) And on

August 9, 2018, Smith met with human resources regarding the issues with Ziemer. (*Id.*

¶ 55.)

Beginning in September 2018, Ziemer allegedly began dating Justin Allison,

another coworker. (*Id.* ¶ 56.) Allison then "made a comment that Ziemer was his problem

now and he was there to protect her." (*Id.* ¶ 58.) Thereafter, Allison allegedly joined in

Ziemer's harassment of Smith and her husband. On September 30, 2018, Allison called

Smith's husband "a gang member," and called the police on him. (*Id.* ¶¶ 59-60.) On November 9, 2018, Ziemer and Allison allegedly hung a cartoon comic strip ridiculing Smith. (*Id.* ¶ 64.) And on December 17, 2018, Allison allegedly left a note on Smith's husband's toolbox that said "Caution: Dead Laker's Nig**r Storage ahead."[2] (*Id.* ¶ 65.) On December 25, 2018, Allison and John Sebitchka, another coworker, approached Smith's husband at a vending machine and told him that "the vending machine was not going to work for him because 'he was black.'" (*Id.* ¶ 66.) In August 2019, Smith saw Allison recording her on his phone. (*Id.* ¶ 71.) And on December 16, 2019, Smith saw Allison walking around the office wearing a bulletproof vest. (*Id.* ¶ 72.)

In Count I of her Second Amended Complaint, Smith alleges that the foregoing conduct constitutes severe and pervasive harassment, of which USPS was aware, in violation of Title VII. (*Id.* ¶¶ 70-77.) Smith alleges that this harassment caused her to suffer anxiety, medical problems, and lost wages. (*Id.* ¶¶ 74-76.) In addition, Smith's proposed Third Amended Complaint would add allegations that the harassment directed at Smith's husband interfered with Smith's work performance and contributed to her anxiety, depression, and medical problems. (Prop. Third Am. Compl. ¶¶ 81-82.)

In Count II of her Second Amended Complaint, Smith alleges that USPS retaliated against her for her September 2016 EEO complaint and her husband's September 2014 EEO complaint. Smith alleges that she applied for several promotions for which she was

---

[2] According to the proposed Third Amended Complaint, it was Smith who found the note on her husband's toolbox. (Prop. Third Am. Compl. ¶ 68.)

qualified, but did not receive them due to USPS management's retaliatory animus. (Second Am. Compl. ¶¶ 78-104.) Specifically, Smith applied for the following promotions:

1. TACS Support Analyst, IT/AS-13, on September 5, 2015. (*Id.* ¶ 81.)

2. TACS Support Analyst, IT/AS-13, on December 21, 2015. (*Id.* ¶ 85.)

3. TACS Support Analyst, IT/AS-13, on June 20, 2017. (*Id.* ¶ 88.)

4. Accounting Technician, IT/AS-13 (career ladder), in April or May 2018. (*Id.* ¶ 92.)

5. Accounting Specialist, IT/AS-14, in July 2018. (*Id.* ¶ 93.)

6. Accounting Technician, IT/AS-13 (career ladder), in July 2018. (*Id.*)

7. Accounting Specialist, IT/AS-14, on January 7, 2020. (*Id.* ¶ 96.)

8. Accounting Technician, IT/AS-13 (career ladder), on January 7, 2020. (*Id.*)

Smith's proposed Third Amended Complaint would add allegations that Smith did not receive these positions because of her race. (Prop. Third Am. Compl. ¶¶ 111-14.)

### B.    The Administrative Record

This lawsuit follows the conclusion of administrative proceedings regarding Smith's April 2017 EEO complaint. In that complaint, Smith checked boxes indicating that the type of discrimination alleged included "[r]ace," "[c]olor," and "[r]etaliation" for protected activity. (Hoskins Decl. [Doc. No. 30], Ex. A ("EEO Compl."), at 1.) Smith's EEO complaint noted that the alleged discriminatory acts occurred from September 2013 to December 2016 at USPS's Oak Park Heights location, and from January 2017 to "[p]resent" at the St. Paul Processing and Distribution Center. (*Id.*) Smith's explanation of the alleged discrimination stated that while she was working as a mail carrier at the Oak Park Heights facility, she "was put in a hostile work environment." (*Id.* at 2.) The complaint

then specified that Smith's coworkers had "falsely report[ed] things and [wrote] letters to management" to try to get Smith in trouble, and purposefully moved and hid things Smith needed to complete her work. (*Id.*) Smith also detailed many of the same allegations outlined in her Second Amended Complaint regarding Hjelmgren and Klein's conduct. (*Id.*) In addition, Smith stated that "[f]rom May 2015 - December 2016 Management [f]ailure to promote made it a hostile work environment." (*Id.*)

Smith's EEO complaint also included Ziemer's alleged misconduct at the St. Paul Processing and Distribution Center. (*Id.* at 2-11.) The EEO complaint detailed many of the same incidents as the Second Amended Complaint, and characterized Ziemer's conduct toward Smith and her husband as harassment and "[s]talking." (*Id.* at 4.)

Following Smith's EEO complaint, the USPS issued a "partial acceptance/partial dismissal" of Smith's complaint. (Hoskins Decl., Ex. B ("Partial Acceptance of EEO Compl.").) The agency identified eighteen alleged incidents of "discriminatory harassment/hostile work environment on the basis of" Smith's race, her color, and in retaliation for Smith's September 2016 EEO complaint:

1. On December 26, 2014, management failed to convert you to a career position until after you filed a grievance;

2. On March 29, 2016, a coworker falsely reported you for having lunch with your husband;

3. On unspecified dates in 2016, a coworker moved and hid items that you needed to do your job;

4. On December 22, 2016, a coworker made comments to other coworkers that he couldn't wait until you left;

5. On December 23, 2016, your former Postmaster made comments to your coworkers accusing you and your husband of lying on your husband's EEO case;

6. From May 2015 through December 2016, management at the Stillwater Oak Park Heights facility failed to promote you;

7. On February 22, 2017, your coworker followed you around at your new position as a Laborer Custodian at the St. Paul P&DC;

8. On March 26, 2017, your coworker followed you and your husband home from work;

9. On March 29, 2017 and April 4, 2017, your coworker watched you work and took notes;

10. On April 2, 2017, your coworker asked other coworkers questions about you and your husband and talked to them about your previous coworkers and your husband's EEO case;

11. On April 5, 2017, your coworker accused you and your husband of keying the coworker's car;

12. On April 6, 2017, you saw your coworker driving on your street;

13. On April 15, 2017, your coworker listened to your conversation with another coworker;

14. On April 22, 2017, your coworker hid your mop;

15. On April 26, 2017, your coworker tried to get you and your husband to walk in front of her car;

16. On April 29, 2017, your Manager told you that the investigation into the incidents since February 2017 was complete, and that nothing would be done to your coworker;

17. On April 30, 2017, your coworker took your broom, and;

18. On April 30, 2017, your coworker followed you and your husband part of the way home.

(*Id.* at 1-2.)

The agency accepted for investigation the incidents numbered seven through eighteen. (*Id.* at 2.) However, the agency declined to investigate incidents one through six. (*Id.* at 3.) The agency reasoned that Smith's first, second, and third claims were untimely, because Smith's first contact with an EEO counselor was on January 21, 2017—more than 45 days after the alleged discriminatory acts. (*Id.* at 4.) In addition, the agency dismissed Smith's fourth and fifth claims because Smith "failed to show that the comments at issue were part of a pattern of harassment." (*Id.* at 6.) Regarding Smith's sixth claim—alleging that management's failure to promote her from May 2015 through December 2016 created a hostile work environment—the agency reasoned that the failure-to-promote claim was untimely insofar as the events occurred prior to December 7, 2016 (45 days prior to Smith's initial contact with an EEO counselor). (*Id.* at 9.) In addition, the agency reasoned that claim six failed to state a claim because:

> You have not specified any positions for which you applied, nor that you have actually applied for any positions, nor dates on which you applied for them. . . . Your only claim in this issue is that you were somehow subjected to a hostile work environment by a failure to promote you.

(*Id.*)

After the agency ultimately concluded that Smith did not prove her remaining discrimination and harassment claims, Smith filed an appeal with the Equal Employment Opportunity Commission's Office of Federal Operations. (Hoskins Decl., Ex. C ("EEOC Appeal").) The EEOC characterized the issue presented as "whether Complainant established that she was discriminated against and subjected to a hostile work environment based on her race (African-American), color (Black) and retaliation." (*Id.* at 1.) The EEOC

did not consider claims one through six, noting that they had been dismissed "for untimely EEO counselor contact and for failure to state a claim," and that Smith "does not contest the dismissal of the claims on appeal." (*Id.* at 3 n.2.) The EEOC upheld the agency's decision regarding claims seven through eighteen, and Smith obtained a right-to-sue letter from the EEOC. (*Id.* at 7; Compl. [Doc. No. 1], Ex. A.)

After obtaining the right-to-sue letter, Smith filed a *pro se* Complaint in this Court alleging failure to promote, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964. (Compl. [Doc. No. 1], at 2, 4.) Less than a week later, Smith filed a *pro se* Amended Complaint removing an erroneously included defendant. (Am. Compl. [Doc. No. 3], Ex. A; *see* Mem. in Opp. to Mot. to Dismiss [Doc. No. 52], at 3 n.1.) After Defendants filed a Motion for Partial Dismissal and for a More Definite Statement [Doc. No. 11], Smith filed the operative Second Amended Complaint. (Second Am. Compl. [Doc. No. 20].) The Second Amended Complaint includes hostile work environment and harassment allegations in Count I, and failure-to-promote allegations in Count II. (*Id.*)

## II.    DISCUSSION

Defendants now move to dismiss, for failure to state a claim, part of Count I of the Second Amended Complaint and all of Count II, under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss [Doc. No. 26].) After obtaining counsel, Smith also moves to amend the pleadings and file an amended complaint—her proposed Third Amended Complaint. (Mot. to Amend Pleadings [Doc. No. 48].) The Court will consider each motion in turn.

A.      **Motion for Partial Dismissal**

1.      **Standard of Review**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). The Court may consider the EEO complaint Smith filed with the USPS, the agency's decision on that complaint, and the EEOC's decision on appeal as matters of public record. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("We have previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss." (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802–03 (8th Cir. 2002))).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere

12

conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### 2.   Administrative Exhaustion and Statute of Limitations Under Title VII

Defendants' Motion for Partial Dismissal raises two related procedural barriers to litigating a Title VII claim: 1) the requirement that a Title VII plaintiff administratively exhaust her discrimination claims prior to filing a lawsuit, and 2) the 45-day statute of limitations applicable to discrimination claims brought by federal employees. "Before the federal courts may hear a discrimination claim, an employee must fully exhaust her administrative remedies." *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003). "[E]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994)).

For federal employees like Smith, administrative exhaustion "requires, as an initial matter, that she 'initiate contact' with an Equal Employment Opportunity (EEO) counselor 'within 45 days of the date of the matter alleged to be discriminatory' or of the effective date of the alleged discriminatory personnel action." *Burkett*, 327 F.3d at 660 (quoting 29 C.F.R. § 1614.105(a)(1)). "If the matter cannot be resolved informally with the help of the counselor, the employee may file a formal EEO complaint with the agency." *Id.* Once the employee has fully pursued the EEO complaint process and obtained a right-to-sue letter,

she has "a green light to bring her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court." *Shannon*, 72 F.3d at 684. The employee's lawsuit need not "mirror the administrative charges," but "the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (first citing *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998), then quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)) (alteration in original).

In considering whether Smith has administratively exhausted her discrimination claims, the Court must construe her claims "charitably" so as to avoid "us[ing] Title VII's administrative procedures as a trap for unwary *pro se* civil-rights plaintiffs." *Shannon*, 72 F.3d at 685. "But there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made." *Id.* (citation omitted). Notably, administrative exhaustion and the timeliness of a discrimination claim are both issues that may be determined at the pleading stage. *See Seabrook v. Indep. Sch. Dist. #535*, No. CV 16-2245(DSD/BRT), 2017 WL 685102, at *2–4 (D. Minn. Feb. 21, 2017) (holding, on a motion under Federal Rule of Civil Procedure 12(c), that the plaintiff's discrimination claims were time-barred and that the plaintiff had failed to exhaust her administrative remedies).

14

### 3.     Count I: Hostile Work Environment Claims Based on Harassment of Smith's Husband

Defendants argue that Count I should be dismissed to the extent the Second Amended Complaint includes unexhausted and untimely allegations of harassment of Smith's husband at the St. Paul Processing and Distribution Center.

The Court finds that the allegations of harassment of Smith's husband in Count I were exhausted by Smith's April 2017 EEO complaint. Once an employee has fully pursued the EEO complaint process and obtained a right-to-sue letter, she has "a green light to bring her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court." *Shannon*, 72 F.3d at 684. The employee's lawsuit need not "mirror the administrative charges," but "the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Duncan*, 371 F.3d at 1025 (first citing *Nichols*, 154 F.3d at 886, then quoting *Cobb*, 850 F.2d at 359).

Here, Smith's April 2017 EEO complaint alleged extensive harassment of both herself and her husband. Although the Second Amended Complaint does contain additional incidents of harassment and discrimination against Smith's husband that were not identified in Smith's EEO complaint—such as the allegation that Allison left a threatening, vulgar, and racist note on Smith's husband's toolbox (Second Am. Compl. ¶ 65)—an administrative investigation into such incidents "could reasonably be expected to grow out of the charge of discrimination." *Duncan, Inc.*, 371 F.3d at 1025. Smith's April 2017 EEO

complaint alleged numerous incidents of harassment at the hands of Ziemer, and included incidents where both Smith and her husband were the targets of harassment. As Smith's proposed Third Amended Complaint makes clear,[3] Smith's theory is that the harassment directed to her husband contributed to the hostile work environment she experienced. Because Smith's hostile work environment claim is therefore intertwined with the harassment Smith's husband allegedly experienced, the administrative investigation into Smith's claim could reasonably be expected to reach the harassment alleged in Count I. Thus, Smith's allegations in Count I were exhausted by her April 2017 EEO complaint.

Defendants also argue that Count I's allegations related to the harassment of Smith's husband are untimely. In determining whether a hostile work environment claim is timely, the Court must consider "whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Rowe v. Hussmann Corp.*, 381 F.3d 775, 779 (8th Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)). Here, the statutory time period was December 7, 2016 (45 days prior to Smith's EEO counselor contact) to April 30, 2017 (the date of Smith's EEO complaint). Smith's EEO complaint alleged numerous instances within this period where Ziemer allegedly harassed Smith and her husband. (*See* Partial Acceptance of EEO Compl. 1-2 (cataloguing the EEO

---

[3] Smith's proposed Third Amended Complaint would add allegations tying the harassment of Smith's husband to Smith's own injuries. (*See* Prop. Third Am. Compl. ¶¶ 81-82.) The proposed allegations would further clarify that Smith's theory is that the harassment directed toward her husband contributed to the hostile work environment *she* experienced.

complaint's allegations).) Defendants argue that the harassment alleged in the EEO complaint was so dissimilar to Count I's allegations of harassment directed to Smith's husband that the allegations are not part of the same hostile work environment claim. For example, Defendants argue that the allegations pertaining exclusively to Smith's husband involve overt racial animus, threats, and sexual harassment, whereas the harassment alleged in the EEO complaint did not.

But the Court cannot say, as a matter of law and based on the pleadings, that the allegations are so dissimilar that they do not form the basis for the same hostile work environment claim. Both the EEO complaint and Smith's Second Amended Complaint alleged an extensive history of harassment (of both Smith and her husband) allegedly perpetrated by Ziemer and her confederates, beginning within the statutory limitations period and continuing thereafter. In light of these extensive allegations, the fact that some instances of alleged harassment are more overtly racial, involve a different breed of harassment, or occurred months or years after the conduct alleged in Smith's EEO complaint does not mean, at the pleading stage, that the allegations are not part of the same hostile work environment for purposes of Title VII's statute of limitations.

In short, Count I alleges that Smith and her husband experienced harassment while working for Defendants, and that their experiences contributed to a hostile work environment that impacted Smith. Smith has plausibly alleged a single hostile work environment claim for purposes of Title VII's administrative exhaustion requirement and its statute of limitations. Accordingly, the Court finds that the allegations of harassment of

Smith's husband in Count I are both timely and exhausted by virtue of Smith's April 2017 EEO complaint.

### 4.     Count II: Smith's Failure-to-Promote Claims

Defendants argue that Smith has not administratively exhausted Count II's failure-to-promote claims. To reiterate, Smith claims eight instances in which Defendants failed to promote her in violation of Title VII:

1. September 5, 2015 - TACS Support Analyst, IT/AS-13 (Second Am. Compl. ¶ 81)

2. December 21, 2015 - TACS Support Analyst, IT/AS-13 (*id.* ¶ 85)

3. June 20, 2017 - TACS Support Analyst, IT/AS-13 (*id.* ¶ 88)

4. April or May 2018 - Accounting Technician, IT/AS-13 (career ladder) (*id.* ¶ 92)

5. July 2018 - Accounting Specialist, IT/AS-14 (*id.* ¶ 93)

6. July 2018 - Accounting Technician, IT/AS-13 (career ladder) (*id.*)

7. January 7, 2020 - Accounting Specialist, IT/AS-14 (*id.* ¶ 96)

8. January 7, 2020 - Accounting Technician, IT/AS-13 (career ladder) (*id.*)

Smith's earliest contact with an EEO counselor was January 21, 2017. (Partial Acceptance of EEO Compl. 4.) Smith filed the EEO charge giving rise to this lawsuit on April 30, 2017. (Second Am. Compl. ¶ 6.)

Under *National Railroad Passenger Corp. v. Morgan*, the "failure to promote" is a discrete act, and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. 101, 113–14 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful

employment practice.'" *Id.* at 114. Consequently, Smith was required to raise each alleged failure to promote in an EEO complaint. *See Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir. 2005) (holding that, under *Morgan*, employee was required to raise each claimed incident of discriminatory refusal to hire or rehire before the EEOC).

The administrative record shows that Smith did not do so. Smith's April 2017 EEO complaint alleged that: "[f]rom May 2015 - December 2016 Management [f]ailure to promote made it a hostile work environment." (EEO Compl. 2.) But as the USPS observed in declining to investigate this allegation, any failure to promote occurring prior to December 7, 2016 was time-barred because Smith did not consult an EEO counselor until January 21, 2017. (Partial Acceptance of EEO Compl. 4.) Neither Smith's EEO complaint, the operative Second Amended Complaint, nor the proposed Third Amended Complaint identify any failure to promote between December 7, 2016 and January 21, 2017. Rather, Smith alleges that she did not receive promotions in September and December 2015, and then on six occasions after she filed her April 2017 EEO complaint. (Second Am. Compl. ¶¶ 81-96.) Because Smith's allegations regarding the September and December 2015 promotions occurred prior to December 7, 2016, the Court finds that Smith's failure-to-promote claim with respect to those promotions is time-barred.

That leaves Smith's six claims for failure to promote in June 2017, April or May 2018, July 2018, and January 2020. To be sure, these alleged failures to promote occurred after Smith's April 2017 EEO complaint, which alleged that "[f]rom May 2015 - December 2016 Management [f]ailure to promote made it a hostile work environment." (EEO Compl. 2.) And it is true that "[t]he claims of employment discrimination [that may be raised in a

federal complaint] may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Parisi*, 400 F.3d at 585.

Nevertheless, Smith's post-complaint failure-to-promote allegations were not exhausted by her April 2017 EEO complaint. As the *Parisi* court reasoned, "because refusals to hire or rehire constitute discrete employment actions, it is not reasonable to expect the EEOC to look for and investigate such adverse employment actions if they are nowhere mentioned in the administrative charge." *Id.* at 586. Smith's failure-to-promote claims, like the refusal-to-hire allegations in *Parisi*, are discrete discriminatory acts under *Morgan*. Thus, "the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge" does not include Smith's post-complaint failure-to-promote allegations. *See id.* at 585–86.

However, Smith argues that her post-complaint failure-to-promote allegations need not be separately exhausted under *Wedow v. City of Kansas City*, 442 F.3d 661 (8th Cir. 2006). In *Wedow*, the Eighth Circuit recognized the general rule that "[w]here the alleged discriminatory or retaliatory conduct has occurred subsequent to a timely filed EEOC charge, we have consistently held that '[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought.'" *Id.* at 672 (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)).

But the *Wedow* court also recognized that it had "considerably narrowed" its view "of what is 'like or reasonably related' to the originally filed EEOC allegations." *Id.* In

20

particular, the court noted that where an employee files an EEOC complaint alleging discrimination and the employer subsequently retaliates against the employee for filing that complaint (so-called "direct retaliation"), the "retaliation claims are not reasonably related to [the] underlying discrimination claims." *Id.* (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)); *accord Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851–52 (8th Cir. 2012) (holding that direct retaliation is a discrete act of discrimination for which a separate EEOC charge is required, and is not "like or reasonably related" to discrimination alleged in the EEOC charge). Ultimately, the *Wedow* court held that a narrow corollary of the "like or reasonably related" exhaustion exception applied on the facts before it: namely, that discrete retaliatory acts subsequent to an EEOC charge need not be separately exhausted so long as "the subsequent retaliatory acts were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature." *Wedow*, 442 F.3d at 674.

Insofar as Smith argues that her post-complaint failure-to-promote allegations claim "direct retaliation" in response to her April 2017 EEO complaint and therefore need not be separately exhausted, both *Wedow* and *Richter* squarely foreclose that argument. *Wedow*, 442 F.3d at 672; *Richter*, 686 F.3d at 851–52. Moreover, *Wedow's* narrow exhaustion exception does not apply here because Smith's EEO complaint did not specify that the alleged failure to promote was retaliation "of an ongoing and continuing nature." *Wedow*, 442 F.3d at 674; *see also Richter*, 686 F.3d at 852 n.1 (distinguishing *Wedow* by emphasizing that *Wedow's* holding rested on an allegation of "ongoing retaliation" in the

21

EEOC charge).[4] To the contrary, Smith's EEO complaint stated only that the period of the claimed failure to promote was May 2015 to December 2016.

In sum, Smith's allegation that Defendants violated Title VII by failing to promote her in September and December 2015 is untimely because she did not initiate contact with an EEO counselor until January 2017. And Smith was required to separately exhaust her post-complaint failure-to-promote allegations, but did not do so. Accordingly, the Court finds that Count II fails to state a claim for which relief may be granted, and grants Defendants' motion as to that Count.

### B.    Motion for Leave to Amend

Smith seeks leave to file a Third Amended Complaint, which contains several additional allegations with respect to Counts I and II and clarifies several other paragraphs in the Second Amended Complaint. (*See* Prop. Third Am. Compl.) Under Federal Rule of

---

[4] At oral argument, Smith's counsel suggested that *Wedow* and *Richter* present a split of authority within the Eighth Circuit. The Court disagrees. *Richter* stands for the proposition that where an employee files a charge alleging discrimination, and the employer subsequently retaliates against the employee for filing that charge (so-called "direct retaliation"), the direct retaliation constitutes a separate, discrete act of discrimination that must be separately exhausted under *Morgan*. Not only did *Wedow* accept that proposition, but the *Richter* court quoted *Wedow's* explanation of that rule. *Richter*, 686 F.3d at 852. By contrast, *Wedow* stands for the narrower rule that where an employee files a charge alleging ongoing retaliation, and the employer subsequently retaliates against the employee for filing that charge, the employer's retaliation is "like or related to" the "ongoing retaliation" alleged in the EEOC complaint and the employee therefore need not file an additional charge alleging the subsequent retaliation. The *Richter* court did not disagree with *Wedow* on that point, and *Wedow's* analysis is consistent with *Morgan's* distinction between discrete acts of discrimination and the type of ongoing discrimination at the heart of a hostile work environment claim. *See Morgan*, 536 U.S. at 115–19.

Civil Procedure 15(a)(2), Smith must obtain either the Defendants' consent or the Court's leave to make such an amendment. The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "But parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citing *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)). Leave to amend may be denied "if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

Defendants argue that Smith's motion should be denied because the proposed amendments would be futile. To be sure, the proposed Third Amended Complaint would not save Count II.[5] Nonetheless, the proposed amendments make several clarifications and include additional allegations pertinent to Count I, and the amendments are therefore not wholly futile. Moreover, Smith filed her Second Amended Complaint while proceeding *pro se*, and sought leave to amend her complaint after obtaining counsel and after Defendants' motion identified purported deficiencies in the Second Amended Complaint. Under these circumstances, it cannot be said that Smith has acted with undue delay, bad

---

[5] The only substantive change relevant to the exhaustion analysis is the additional allegation that "Plaintiff exhausted her administrative claims in [her April 2017 EEO complaint] when she obtained a right to sue letter from the EEOC." (Prop. Third Am. Compl. ¶ 85.) But a "mere conclusory statement[]" is insufficient to plausibly allege administrative exhaustion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

faith, or a dilatory motive. And because Defendants have had the opportunity to analyze and respond to the allegations in the proposed Third Amended Complaint, they would not be prejudiced by granting Smith's motion. Accordingly, the Court grants Smith's Motion for Leave to Amend.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Partial Dismissal [Doc. No. 26] is **GRANTED in part** and **DENIED in part**, and Plaintiff's failure-to-promote claims in Count II of the Second Amended Complaint are **DISMISSED**.

2. Plaintiff's Motion for Leave to Amend [Doc. No. 48] is **GRANTED**, and Plaintiff should file a Third Amended Complaint, setting forth only the surviving claims under this Order and the allegations relevant to those claims, in the next seven (7) days.

**IT IS SO ORDERED.**


Dated: December 8, 2020                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge