UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHELLE A. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE;<br>LOUIS DEJOY, U.S. Postmaster General, in his official capacity,<br><br>Defendants. | Case No.: 20-cv-00498 SRN-DTS |

# THIRD AMENDED COMPLAINT

Plaintiff Michelle Smith (the "Plaintiff"), as and for her Complaint against Defendants United States Postal Service and Louis Dejoy, Postmaster General (the "Defendants"), states and alleges as follows:

1. Plaintiff is a Minnesota resident, residing at 1580 Lakewood Dr. North, in the City of St. Paul, County of Ramsey, State of Minnesota.

2. Defendant United States Postal Service ("USPS"), is an independent establishment of the Executive Brach of the United States Government.

3. Louis Dejoy is the United States Postmaster General, located at 475 L'enfant Plaza SW, in the District of Columbia, in the United States.

4. The United States District Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331.

1

5. This action raises a claim under Title VII of the Civil Rights Act of 1964 for harassment and discriminatorily hostile work environment, retaliation, and failure to promote, 42 U.S.C. § 2000e.

6. On April 30, 2017, Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"), Agency Case No. 4E-553-0009-17.

7. The allegations were for harassment, failure to promote, and retaliation by USPS on the basis of Plaintiff's race.

8. Plaintiff obtained a right to sue letter from the EEOC in Agency Case No. 4E-553-0009-17. A true and correct copy of said letter is attached hereto as **Exhibit A**.

9. Plaintiff is a member of a statutorily protected class because of her race (African-American) and color (Black).

10. Plaintiff's husband, Steve Smith ("Smith"), is also a member of a statutorily protected class because of his race (African-American) and color (Black).

11. Plaintiff worked as a Mail Carrier at the USPS's Stillwater location in Oak Park Heights ("Oak Park Heights") from December 2006 through December 2016.

12. Smith worked as a Laborer Custodian at Oak Park Heights from October 2013 through December 2016.

13. From 2014 to 2016, Plaintiff and Smith experienced racial discrimination while at Oak Park Heights.

14. In September 2014, Smith filed a complaint with the EEOC for harassment, offensive conduct, and discrimination.

15. Smith's September 2014 case is still pending before the EEOC.

16. On May 27, 2016, Smith approached Postmaster Terry Hjelmgren, ("Hjelmgren") about being promoted to a maintenance mechanic.

17. Hjelmgren told Smith that was not going to happen because Smith was Black, and the Post Office was run by the "good old boys."

18. Throughout his time at Oak Park Heights, Hjelmgren and Tommy Klein ("Klein"), a postal clerk, referred to Smith as "Monkey Man."

19. During this time, a picture of a gorilla was put on the work room floor, and Supervisor Char Wilson ("Wilson") said it looked like Smith.

20. On September 12, 2016, Plaintiff filed a complaint with the EEOC (Agency Case No. 4E-553-0047-16) for harassment, leave and pay, and working conditions.

21. Plaintiff's case is still pending with the EEOC.

22. On December 22, 2016, Plaintiff overheard comments made by Klein.

23. Klein stated he could not wait until the Smiths "were gone like the Obamas" because he was "trying to clean the place up."

24. On December 23, 2016, Plaintiff overheard Hjelmgren say that the Smiths were lying on their EEOC claim in Agency Case No. 4E-553-0047-16.

25. In December 2016, Plaintiff and Smith left Oak Park Heights because of harassment and discrimination.

26. On January 9, 2017, Plaintiff began working as Laborer Custodian at the USPS's Processing & Distribution Center, in St. Paul, Minnesota ("St. Paul P&DC").

27. To work at St. Paul P&DC, Plaintiff was demoted to a Laborer Custodian and took a pay cut of $6 per hour.

**Count I: Harassment and Hostile Work Environment**

28. Plaintiff restates and realleges the foregoing as if fully stated herein.

29. From January 2017 through the present, Plaintiff has endured offensive conduct and harassment by her coworker, Ann Ziemer ("Ziemer"), on the basis of Plaintiff's race and/or because of Smith's previous EEOC complaint.

30. Smith's complaint named Klein in its allegations, and Ziemer is a friend of Klein.

31. Ziemer's race is Caucasian, and her color is white.

32. Ziemer has engaged in offensive conduct and harassment to others (besides Plaintiff) on the basis on their race.

33. There is documentation of this in Ziemer's file.

34. In January of 2017, Ziemer mentioned to Smith that she knew Klein and Hjelmgren.

35. Throughout January and February 2017, Ziemer followed Plaintiff around St. Paul P&DC.

36. On February 22, 2017, Plaintiff confronted Ziemer and reported it to management.

37. On February 22, 2017, Plaintiff's supervisor, Larry Stevens ("Stevens"), told Plaintiff he was having a sexual relationship with Ziemer.

38. On March 24, 2017, the Plaintiff, Smith, and Ziemer met with management and were told to stay away from one another and to treat each other with dignity and respect.

39. On March 29, 2017 and April 4, 2017, Ziemer followed Plaintiff around St. Paul P&DC and took notes.

40. On March 26, 2017, Ziemer waited for Plaintiff and Smith in the St. Paul P&DC parking lot, wrote down their license plate, and followed them home.

41. On April 2, 2017, Plaintiff overheard Ziemer asking coworkers about Smith's prior EEOC complaint and discussing her relationship with Klein and Hjelmgren.

42. On April 5, 2017, Ziemer made a false allegation that her car had been keyed by Plaintiff and Smith.

43. That day, Stevens told Plaintiff she had nothing to worry about because a witness saw Ziemer key her own car.

44. On April 6, 2017, Plaintiff observed Ziemer driving on Plaintiff's street in St. Paul.

45. On April 22, 2017 and April 30, 2017, Ziemer hid Plaintiff's mop.

46. On April 26, 2017, Ziemer tried to get Plaintiff and Smith to walk in front of her car.

47. Plaintiff continually reported each of these incidents to management at USPS.

48. On April 29, 2017, Stevens told Plaintiff the investigation into Ziemer's actions had been completed and no further action would be taken.

49. That same day, Plaintiff was informed that Ziemer had accused Plaintiff of threatening her.

50. On October 19, 2017, Ziemer came up behind Smith and rubbed her body and chest on him.

51. On November 13, 2017, Ziemer filed a false report with management that the Smiths were engaging in inappropriate physical contact at work.

52. On December 17, 2017, Plaintiff caught Ziemer taking photos of her.

53. On April 15, 2018, Ziemer made a comment about Smith's music and said she "could not stand him acting black."

54. On or around April 29, 2018, and May 2, 2018, Ziemer followed Smith around St. Paul P&D.

5

55. On July 6, 2018, Plaintiff spoke with Supervisor Kurtis Morrisette ("Morrisette") and Morrisette told Plaintiff management was aware of the issue with Ziemer.

56. On July 18, 2018, Ziemer blocked Smith's car in, wrote down his license plate, and called the police on him.

57. USPS management spoke with the police officers and said there were ongoing issues between the parties.

58. On August 9, 2018, Plaintiff met with Human Resources regarding the issues with Ziemer.

59. Around September 2018, Ziemer began dating Justin Allison, another USPS employee ("Allison").

60. Plaintiff noticed them spending on a lot of time together.

61. On September 11, 2018, Allison made a comment that Ziemer was his problem now and he was there to protect her (Ziemer).

62. On September 30, 2018, Allison called Smith "a gang member."

63. On September 30, 2018, Allison called the police on Smith.

64. Smith spoke with the police and stated there were ongoing issues between Plaintiff, Smith, Allison, and Ziemer.

65. The police report stated, "the post office will be dealing with this internally."

66. USPS has not dealt with this internally.

67. On November 9, 2018, Ziemer and Allison hung up a cartoon comic strip at work that ridiculed Plaintiff.

68. On December 17, 2018, Plaintiff found a note Allison left on Smith's toolbox that said "Caution: Dead Laker's Nig**r Storage ahead."

69. On December 25, 2018, Allison and another co-worker, John Sebitchka ("Sebitchka") approached Smith while he was at the vending machine. Sebitchka told Smith the vending machine was not going to work for him because "he was black."

70. On May 26, 2019, Allison told Smith he knew who wrote the letter and so did management, and management was not planning to address it.

71. On August 30, 2019, Plaintiff saw Allison recording her on his phone.

72. On December 16, 2019 Plaintiff saw Allison walking around the office with a bullet proof vest on.

73. Plaintiff was subjected to a harassment because of her race and/or Smith's EEOC complaint.

74. USPS knew about the ongoing harassment.

75. USPS failed to take prompt and appropriate corrective action on the harassment.

76. The ongoing harassment was severe and pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

77. The discriminatory harassment altered the conditions of Plaintiff's employment and unreasonably interfered with Plaintiff's work performance.

78. Plaintiff's anxiety over this situation has impacted her ability to work and so she has not received overtime.

79. Plaintiff has experienced medical problems and has obtained psychological and psychiatric counseling because of her anxiety over the situation at USPS.

80. Plaintiff has missed work and lost wages due to her anxiety and depression.

81. The ongoing harassment Smith was subjected to unreasonably interfered with Plaintiff's work performance.

82.     The ongoing harassment Smith was subjected to contributed to Plaintiff's anxiety, depression, and medical problems.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment as follows:

1.  Equitable relief, including without limitation, enjoining Defendants to promote Plaintiff to a level 9 MPE or an accounting position at the TACS building;

2.  For an award of damages in an amount in excess of $75,000.00, exclusive of interest and costs;

3.  For pre and post-judgment interest;

4.  For all expenses, costs and disbursements, and reasonable attorney's fees as allowed by law;

5.  Including and without limitation attorney's fees under 28 U.S.C. § 2412; and

6.  All other relief the court deems just and equitable.

ECKLAND & BLANDO LLP

Dated: December 14, 2020                /s/ DANIEL J. CRAGG
                                        Daniel J. Cragg, Esq. (#389888)
                                        Robert T. Dube Jr., Esq. (#0401597)
                                        800 Lumber Exchange
                                        10 South Fifth Street
                                        Minneapolis, MN  55402
                                        (612) 236-0160

                                        *Attorney for Plaintiff Michelle Smith.*